

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **ROBERT W. CHISM,** ) | |
| ) | |
| Plaintiff, ) | Case No. 06 C 3374 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| **KENALL MANUFACTURING** ) | |
| **COMPANY,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, Kenall Manufacturing Company ("Kenall"), moves for summary judgment on

all counts against Plaintiff, Robert W. Chism ("Chism"), who alleges employment discrimination

and breach of contract. The parties have consented, pursuant to 28 U.S.C. § 636(c) and Local

Rule 73.1, to have this Court decide any and all matters in this case, including the entry of final

judgment. For the reasons that follow, Kenall's motion is granted.

### I.    Background

Before setting out the undisputed material facts that form the basis for its decision, the

Court must address an issue relating to the parties' factual submissions in this case. On

October 31, 2007, Kenall noticed its "Motion to Strike Plaintiff's Opposing Affidavits in

Opposition to the Motion for Summary Judgment." However, the motion that was actually filed

in conjunction with that notice was a duplicate of Kenall's motion for summary judgment. No

"Motion to Strike Plaintiff's Opposing Affidavits" was ever filed with the Court. Consequently,

Chism filed what he titled a "Motion in Limine," arguing that his affidavits should not be stricken because no motion to that effect had been properly filed. Because Kenall filed a notice without an underlying motion, that notice is superfluous and is hereby stricken. Consequently, Chism's "Motion in Limine" is denied as moot.

In examining the briefs, statements of fact, and evidence of record, the Court has discovered another issue relating to the parties' factual submissions that must be addressed at this point: Chism's objections to many of Kenall's statements of undisputed fact are not in compliance with Local Rule 56.1(b)(3)(B)'s requirement of "specific references to the affidavits, parts of the record, and other supporting materials." For example, in response to Kenall's statement that the employment contract between Chism and Kenall was never modified in writing (Def.'s LR 56.1 Stmt., ¶ 5), Chism states simply: "Objection as an incorrect statement & taken out of context." This objection is vague and does not specify the factual basis of any disagreement. The Court also notes that many of Chism's references to the factual record in his objections fail to comply with Local Rule 56.1(b)(3)(B) because they do not actually state the factual basis of the objection. For example, Chism's objection to ¶ 15 of Kenall's Local Rule 56.1 statement reads "Objection & denied, see PSAF 7, PSAF 8, PSAF 9, PSAF 32 & PSAF 40." "PSAF" refers to Chism's Local Rule 56.1(b)(3)(C) statement of additional facts. The PSAF, in turn, contains statements of a general nature, such as "Plaintiff made contributions to Kenall strategic objectives [sic]," and cites a string of depositions with page and line numbers but no actual quotations. (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 9.) Therefore, in order to ascertain Chism's position on the factual assertions he denies, the Court is forced to consult first the objection, then the Local Rule 56.1(b)(3)(C) statement, and finally the depositions to determine what they

actually say. As the Seventh Circuit has stated, "[j]udges are not like pigs, hunting for truffles buried in the record." *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002). Chism's failure to follow the Local Rules is not merely a breach of a formality, but a serious inconvenience to the Court as it attempts to triangulate between Chism's LR 56.1(b)(3)(B) and (C) statements and the record in order to locate Chism's position on the facts.

Finally, the Court notes that many of Chism's objections are frivolous. It appears that, rather than acknowledging "damaging" facts, Chism's strategy has been to object based on a series of blind citations to affidavits, depositions, and other documents. In many cases, the evidence—once it is located—does not contradict the statement objected to in any way. For example, ¶ 50 of Kenall's statement of undisputed facts states: "Hawkins and the plaintiff met again on August 16, 2005. Given the diminishing role of the plaintiff's position . . . Hawkins indicated that the position was going to be eliminated." (Def.'s LR 56.1 Stmt., ¶ 50.) Chism replies: "Denied, see PSAF 8; PSAF 28, PSAF 30 & PSAF 32." But three of the paragraphs cited are completely irrelevant. PSAF 8 states "[George] Ryder believed that when Hawkins made Plaintiff Senior Advisor to the President, it was a promotion." (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 8.) PSAF 30 states that "[a]s the second oldest employee at Kenall . . . Plaintiff was well qualified for his position at Kenall." (*Id.*, ¶ 30.) PSAF 32 declares that "Plaintiff was conscientious & passionate about accomplishing Kenall corporate objectives [sic]." (*Id.*, ¶ 32.) PSAF 28 comes closest to being relevant, but still fails to contradict Kenall's statement. In PSAF 28, Chism states that his job responsibilities were not eliminated and that they were assumed by various employees after Chism's termination. (*Id.*, ¶ 28.) However, there is no

- 3 -

actual contradiction, since Kenall is asserting that Chism's position was eliminated, not that his job functions were eliminated. (Def.'s LR 56.1 Stmt., ¶ 50.) Therefore, not only is the objection improper in its form, as discussed above, but completely without merit. The Court's attempt to ascertain which operative facts are not genuinely in dispute has been seriously hampered by this confusing and at times misleading presentation of the facts.

The Court is entitled to demand strict compliance with the Local Rules governing summary judgment. *See Carlson v. Wal-Mart Stores, Inc.*, No. 06 C 4318, 2007 WL 4569867, at *1 n.1 (N.D. Ill. December 21, 2007); *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). When a party fails to comply with Local Rule 56.1, particularly when the failure is egregious, the Court has discretion to disregard that party's factual submissions and rely on the opponent's statement of material facts in determining whether to grant summary judgment. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (district court had discretion to rely on defendants' statement of facts alone where plaintiff's statement was "filled with irrelevant information, legal arguments, and conjecture."). The Seventh Circuit has stated that "it is a reasonable judgment . . . that strict, consistent, 'bright-line' enforcement is essential to obtaining compliance" with the Local Rules. *Koszola*, 385 F.3d at 1109 (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995)). Therefore, the Court would be justified in disregarding Chism's non-conforming factual submissions. However, in the interest of adjudicating this case on its merits, the Court has not done so. The Court has attempted to ascertain which facts are genuinely disputed based on actual evidence in the record; the facts set forth below are the result of this effort. Some facts that the Court has accepted as undisputed are objected to in Chism's responses. The Court has found that these objections are

without merit; because the meritless objections are so numerous, the Court will not discuss each one individually.

## Undisputed Facts

Kenall is a corporation headquartered in Gurnee, Illinois, that manufactures lighting fixtures. (Def.'s LR 56.1 Stmt., ¶ 2.) Chism was employed by Kenall beginning in 1978. (*Id.*, ¶ 4.) When he began working for Kenall, Chism signed a written employment contract with Kenneth Hawkins, the founder and then-president of Kenall. (*Id.*) The contract stated that Chism would be employed as "vice-president of finance and administration." (*Id.*, Ex. A, art. 1.) The contract specified that "the employment hereunder shall be for the term of one (1) year," and provided that it could only be amended or modified in writing. (*Id.*, Ex. A., arts. 3, 11.) There was never a written modification of the contract, nor did Chism and Kenall enter into a new written employment agreement, although Chism asserts that the agreement was "replaced by a 1979 implied verbal integrity career employment contract." (Def.'s LR 56.1 Stmt., ¶ 5; Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 1.) Chism continued to be employed at Kenall after the expiration of the term provided for in the 1978 employment contract. In 1983, Chism became Kenall's Vice President of Marketing and Sales. (Def.'s LR 56.1 Stmt., ¶ 6.) In 1997, Chism became the Executive Vice President of Sales and Corporate Development. (*Id.*) In 2000, his duties changed once more and his title was changed to Executive Vice President of Corporate and Strategic Development. (*Id.*) These changes in title reflected the fact, denied by Chism but uncontroverted in the factual record, that Chism's job responsibilities were diminished over the years as a result of perceived deficiencies in his performance. (Def.'s LR 56.1 Stmt., ¶ 15;

- 5 -

Hawkins Aff., ¶ 4.) While Jim Hawkins, Kenall's current president and CEO, did not refer to these changes in title as demotions in his deposition testimony, he indicated that Chism was stripped of his marketing duties in 1997 because he "had not performed . . . adequately." (Hawkins Dep. at 94-95.) Similarly, Chism's sales duties were reassigned in 2000 because Hawkins felt another employee was capable of leading the department and "didn't feel [Chism] was [capable]." (*Id.* at 98.)

While the record suggests a gradual decline in Chism's job performance (at least as it was perceived by his employer), it appears that the series of events that ultimately lead to the termination of Chism's employment with Kenall began in 2004. In July 2004, an incident occurred between Chism and Adrienne Cramer, Kenall's human resources manager. Cramer alleges that she was in Chism's office when he leered at her chest inappropriately and said, "By the way, nice knit," which she interpreted as having an inappropriate sexual connotation. (Def.'s LR 56.1 Stmt., ¶ 19; Cramer Aff., ¶ 5.) Chism vehemently denies that this occurred, pointing out that he was "friendly and complimentary to females and males," and alleging that Cramer was known to have a "perverse mind and vengeful attitude." (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶¶ 10, 11, 13.) However, both sides agree that Cramer reported this alleged harassment to William Hartwig, her supervisor and a vice-president of the company. (Def.'s LR 56.1 Stmt., ¶ 20.) Although Hartwig stated at the time that he would discuss the matter with Chism, it is unclear whether he did so. (*Id.*) Cramer testified that she confronted Chism herself on August 3, 2004, telling him that she found his conduct inappropriate and threatening to file a formal complaint if Chism behaved inappropriately again. (*Id.*, ¶ 21.)

In the fall of 2004, Chism's conduct led to problems with another female employee, Holly Rodgers, who was an office manager at Kenall. (Def.'s LR 56.1 Stmt., ¶ 22.) Rodgers alleges that while she was in Chism's office one day, he made a remark about the sweater she was wearing that made her "uncomfortable." (*Id.*; Rodgers Aff., ¶ 3.) Rodgers reported the incident to Cramer, the human resources manager, Hartwig, the vice-president, and Jim Hawkins, Kenall's president. (Def.'s LR 56.1 Stmt., ¶¶ 23, 24.) When Rodgers reported the incident to Hawkins, she asked to be reassigned so that she would no longer work under Chism's direction. (*Id.*, ¶ 24.) It is not clear whether this request for reassignment was caused by the alleged sexual harassment; in her deposition, Rodgers testified that it was not. (Rodgers Dep. at 14-15.) However, it is undisputed that during the meeting Rodgers informed Hawkins about the "sweater" comment and stated that Chism had a tendency to make what Rodgers perceived as inappropriate comments with sexual connotations, such as "it's just a quickie." (Def.'s LR 56.1 Stmt., ¶ 24.) While the incident allegedly occurred in the fall of 2004, Rodgers apparently did not report the incident to Cramer, Hartwig, and Hawkins until late February 2005. (Rodgers Aff., ¶¶ 4, 5.)

A third female employee of Kenall, Kelly Mueller, also alleged a series of inappropriate encounters with Chism. One of the alleged incidents, involving an unexpected and unwanted kiss from Chism at a co-worker's wedding reception, occurred in August 2001 and was reported to Cramer, the human resources manager, at that time. (Def.'s LR 56.1 Stmt., ¶ 26; Mueller Aff., ¶ 5.) In December 2001, Mueller reported to Cramer that Chism had followed her around at the company Christmas party, asking her to dance and stating "you can run, but you can't hide," which she found inappropriate. (Def.'s LR 56.1 Stmt., ¶ 27; Mueller Aff., ¶ 6.) On both occasions, Mueller declined to make a formal complaint. (Mueller Aff., ¶¶ 5, 6.) A third

incident occurred in late 2004 or early 2005, when Mueller alleges that Chism "unexpectedly peered at me through some plants on a wall divider . . . stared at my shirt and made a comment." (Def.'s LR 56.1 Stmt., ¶ 28; Mueller Aff., ¶ 7.) Mueller informally reported this incident to Cramer a few days later. (Def.'s LR 56.1 Stmt. ¶ 28.)

These alleged incidents of harassment became a major issue in Chism's employment relationship with Kenall on January 17, 2005, when Cramer had a conversation with Hawkins regarding difficulties in her working relationship with Chism. During the course of this conversation, Cramer told Hawkins about the July 2004 incident in which she claims Chism ogled her chest while making a suggestive remark about her sweater. (Def.'s LR 56.1 Stmt., ¶ 29; Cramer Aff., ¶ 14; Hawkins Aff., ¶ 5.) The following day, Hawkins had a meeting with Chism in which he asked about Cramer's allegations. (Def.'s LR 56.1 Stmt., ¶ 30.) Chism vehemently denied that his statement had any sexual connotation and attacked Cramer's credibility and character. (*Id.*; Pl.'s LR 56.1 Stmt. of Add'l Facts, Ex. D.) Hawkins told Chism that he was obligated to follow up on Cramer's report and that he could not draw any conclusions about the incident because the only evidence was the statements of the individuals involved. (Def.'s LR 56.1 Stmt., ¶ 31.) Hawkins instructed Chism to keep the incident and the meeting confidential and warned him not to engage in undermining activity against Cramer as retribution for making the report. (*Id.*, ¶ 32.)

On February 7, 2005, Hawkins and Chism met again, this time to discuss Chism's 2004 performance review. (Def.'s LR 56.1 Stmt., ¶ 33.) The topic of harassment arose again in this conversation when Hawkins informed Chism that the decision on his pay raise was being postponed for 90 days, in part because Hawkins wanted to investigate the allegations against

Chism more fully. (*Id.* at ¶ 34, Ex. H; Chism Dep. at 30.) Hawkins also required Chism to take a sexual harassment training course; Chism acquiesced and took the course. (Def.'s LR 56.1 Stmt., ¶ 35; Hawkins Aff., ¶ 11; Chism Dep. at 29-30.) Hawkins requested that Chism keep the sexual harassment allegations and the contents of their meeting confidential. (Hawkins Aff., ¶ 11.) After this meeting, Hawkins learned of the accusations made against Chism by Mueller and Rodgers. (Def.'s LR 56.1 Stmt., ¶ 40.) Hawkins also learned that Chism was talking to other Kenall employees about his sexual harassment training, stating that he had been "rehabbed." (*Id.*, ¶ 41.) Chism was also talking to fellow employees about his conflict with Cramer, asking employees to take sides in the dispute, and spreading rumors about conflicts between Cramer and other employees. (*Id.*, ¶ 42; Hawkins Aff., ¶ 15.)

Hawkins and Chism met again on May 11, 2005, after the 90-day review period they discussed on February 7 had passed. Hawkins recorded the contents of that meeting in a memorandum. (Def.'s LR 56.1 Stmt., ¶ 45.) According to the memorandum, Hawkins informed Chism that additional incidents of alleged sexual harassment had come to light since their last meeting. (*Id.*, ¶ 43.) Hawkins also indicated that he was dissatisfied with Chism's performance, particularly his "belligerent" and "vengeful" attitude towards members of the management team. (Def.'s LR 56.1 Stmt., Ex. J.) Hawkins stated that Chism seemed to be following his own agenda rather than the agenda established by the company, particularly when he went outside the normal chain of command to send a "caustic" email to Kenall's sales representatives. (*Id.*) Hawkins was critical of Chism's treatment of his subordinates, noting that Holly Rodgers had demanded a transfer and that managers had to be called in to "settle down" other employees after they had upsetting meetings with Chism. (*Id.*) Hawkins expressed his concern that Chism was displaying

bad judgment regarding confidentiality and the priorities of the company. (*Id.*) Hawkins informed Chism that, based on this review, he was not going to receive a raise for 2005. (Def.'s LR 56.1 Stmt., ¶ 46.) Hawkins and Chism agreed to meet again in three months to discuss Chism's performance issues. (*Id.*, Ex. J.)

In the months that followed his May 2005 meeting with Chism, Hawkins spoke to several members of Kenall's managerial team who were critical of Chism's abilities and performance. (Def.'s LR 56.1 Stmt., ¶ 47.) In July, Hawkins learned that Chism had told Holly Rodgers that Adrienne Cramer was "out to get her." (*Id.*, ¶ 48.) Nonetheless, as Chism points out, Hawkins sent Chism a note in the summer of 2005 congratulating him on completing twenty-seven years of employment with Kenall and thanking him for his contribution to the company. (Pl.'s LR 56.1 Stmt. of Add'l Facts, Ex. VV.) When Hawkins and Chism met on August 16, 2005, however, Hawkins told Chism that his position was being eliminated. (Def.'s LR 56.1 Stmt., ¶ 50.) Hawkins offered Chism an early retirement or separation package, which was eventually reduced to a writing dated August 23, 2005, with the title "Special Offer." (*Id.*, ¶¶ 51, 52, Ex. B.) The agreement provided that Chism would continue in his current position through the end of 2005, and continue to be employed by Kenall until he turned sixty-five in 2007. (*Id.*, Ex. B.) The agreement also stated that Chism would receive a positive employment reference and that his personnel file would reflect that the charges of harassment against him were unproven. (*Id.*) The final clause of the agreement was a release of all potential claims, including claims of employment discrimination, against Kenall. (*Id.*)

Chism accepted the terms of the agreement and signed it on August 23, 2005. (Def.'s LR 56.1 Stmt., ¶ 52.) The agreement provided that his acceptance could be revoked within seven

days of signing; Chism exercised this power of revocation in a letter dated August 26, 2005. (*Id.*, Ex. C.) Chism's letter indicated that he had a number of reservations regarding the agreement. In particular, he was unhappy that "false and defamatory allegations" would remain in his personnel record, and expressed concern that signing the agreement and becoming a "goodwill ambassador" for Kenall:

> would not allow me 'The Court of Public Opinion'; EEOC investigation of age discrimination, propriety of the alleged sexual harassment investigation and qualified privilege to make defamatory comments in 2004 performance review; civil action against ASC [apparently, Adrienne Cramer], WFH [apparently, William Hartwig], and Kenall.

(Def.'s LR 56.1 Stmt., Ex. C.) In addition to the revocation of the August 23 agreement, Chism's letter contained a counter-offer proposing that all references to harassment in his file be deleted and demanding an additional $250,000 in compensation. (*Id.*) It was also on August 26 that Holly Rodgers informed Hawkins about a private investigator hired by Chism who had contacted her at home in order to gather information about Adrienne Cramer. (*Id.*, ¶ 54.) In fact, Chism had hired an investigator to investigate all five incidents of alleged harassment reported by Cramer, Rodgers, and Kelly Mueller. (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 23.)

On August 31, 2005, Hawkins sent Chism a letter informing him that "your Notice of Revocation . . . has compelled us to conclude that it would be best for all parties if your employment with Kenall were not unnecessarily extended." (Def.'s LR 56.1 Stmt., ¶ 56, Ex. M.) The letter stated that Chism's employment was terminated effective August 31, 2005, and demanded that Chism cease his efforts to contact Kenall employees and investigate the claims against him. (*Id.*, Ex. M.) In the letter, Hawkins also wrote that Kenall would still consider making an agreement with Chism that would implement some of the terms of the original

"Special Offer." (*Id.*) Chism filed a charge of discrimination on December 1, 2005, and received his Notice of Right to Sue from the EEOC on April 28, 2006. On June 21, 2006, Chism initiated the instant lawsuit. Chism's complaint alleges four bases of discovery: age discrimination in violation of the ADEA; retaliatory discharge as a result of Chism's threat to make a report to the EEOC, in violation of the ADEA; a "hostile work environment" based on Chism's age, in violation of the ADEA; and breach of contract. Kenall has moved for summary judgment on all counts. The motion was fully briefed and was orally argued before the Court on January 9, 2008.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when, after construing all the facts of record in the light most favorable to the nonmoving party, the Court finds that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the relevant legal standard, its existence or non-existence could impact the ultimate disposition of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, the Court will grant a motion for summary judgment when "a rational trier of fact could not find for the non-moving party." *Williams v. OSI Educ. Serv., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (quoting *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)). A party cannot avoid summary judgment with mere pleadings or allegations; rather, the non-movant must rely on "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

## B.    Age Discrimination

Count I of Chism's complaint alleges that Kenall terminated him as a result of age discrimination. Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). An ADEA plaintiff must show that age was a determining factor in the adverse employment action that gives rise to his claim. *See Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998) (although age need not be the sole reason for the discharge, the claimant must show that "but for his employer's motive to discriminate against him on the basis of his age, he would not have been discharged."). In other words, Kenall is entitled to summary judgment on this count unless there is some evidence to show that invidious age-based discrimination was a "but-for" or necessary cause of Chism's dismissal. *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). There are two ways for Chism to make the necessary showing. Under the "direct method" of proof, he can present "direct or circumstantial evidence . . . that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Chism may also use the indirect burden-shifting method originally developed in the context of Title VII and later adopted in ADEA cases. *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir. 1988). Chism claims that there is sufficient evidence for him to survive Kenall's motion for summary judgment under both the direct and the indirect method of proof.

- 13 -

### 1. Direct Method of Proof

In order to avoid summary judgment under the direct method of proof, Chism must have some direct or circumstantial evidence that suggests a discriminatory motivation for Kenall's decision to terminate him. *Cerutti*, 349 F.3d at 1061. Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* The Seventh Circuit has explained that the paradigmatic example of direct evidence is a statement such as "I fired you because of your age." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). The Seventh Circuit has also recognized that such direct inculpatory evidence will rarely, if ever, be found. *See Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir. 1992) (stating that direct evidence will "rarely" be found). A plaintiff can also prevail under the direct method of proof by providing circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker. *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Circumstantial evidence may include evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group"; evidence that employees who were similarly situated to the plaintiff but who were not members of the protected class systematically received better treatment; or evidence that the plaintiff was qualified for a job but was replaced by someone outside the protected class. *Id.* Chism can avoid summary judgment by constructing a "convincing mosaic" of circumstantial evidence "from which a rational trier of fact could reasonably infer" that he was discriminated against. *Id.* at 737.

Viewing the facts in the light most favorable to Chism, his evidence is not sufficient to create a triable issue under the direct method. Chism has no direct evidence of age

discrimination: Kenall certainly does not admit to discriminating against Chism based on his age, and there is no evidence in the record of any direct admission of discriminatory intent by a decision-maker. Moving on to circumstantial evidence, Chism cites a combination of factors to show that he has enough evidence to avoid summary judgment, including "ageist remarks by decision makers along with Chism never receiving fair treatment in some alleged sexual harassment claims and a biased investigation and bogus employee review show[ing] that he was never given consideration to maintain his employment at Kenall based on his age. " (Pl.'s Br. at 5.) Chism also argues that the "direct promotion upon the termination of Chism to Michals a younger worker to replace Chism is a direct material fact of discrimination." (*Id.* at 7.) These arguments fail to show that Chism has created a genuine issue of material fact under the direct method of proving age discrimination.

Simply put, Chism has no evidence. At the summary judgment stage, a party cannot rest on mere pleadings or allegations; rather, a party seeking to avoid summary judgment must rely on evidence of a type that would be admissible at trial. *Lewis*, 496 F.3d at 651. Chism alludes to "ageist remarks" in his brief, but has no proof of such remarks in the form of affidavits or deposition testimony. Similarly, Chism's assertions that he "never receiv[ed] fair treatment," was subjected to a "biased investigation," and received performance reviews that were "bogus," may reflect his subjective feelings, but do not provide a factual foundation that would allow a neutral fact-finder to understand the bias, unfairness, and bogusness Chism alleges. Without admissible factual evidence to relate Chism's subjective beliefs to objective reality, there is no genuine issue of material fact. As the Seventh Circuit has observed, "if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact,

then virtually all defense motions for summary judgment in such cases would be doomed." *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006) (quoting *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996)).

Chism's assertion that he was replaced by the thirty-eight year-old David Michals is at least factual in the sense that it can be verified or disproved. Furthermore, Chism is correct that evidence showing that he was qualified for his position and was performing satisfactorily, only to be replaced by a younger employee who was not a member of the ADEA's protected class, could be evidence of age discrimination. However, Chism is undermined by the fact that Michals did not "replace" him, formally or informally. First, as discussed in Section I above, Chism was not formally replaced by anyone because his position, Executive Vice President for Corporate and Strategic Development, was eliminated and was not re-staffed with another employee. To the extent that he was informally replaced because his duties were assumed by other employees, Chism's own statement of facts shows that Michals took on only a part of Chism's duties. (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 28.) Other employees who took on Chism's duties included Jim Hawkins (fifty-four years old and therefore within the ADEA's protected class), Holly Rodgers (forty-seven years old), William Hartwig (fifty-three), Adrienne Cramer (fifty-four), George Ryder (fifty-three), and [unknown first name] Pichietti (thirty-nine). (*Id.*, ¶¶ 28, 30.) Therefore, not only was Chism not replaced by an employee outside the protected class, but five out of the seven employees who took on his duties after he was terminated were within the protected class. In light of these undisputed facts, Chism's "convincing mosaic" of evidence is reduced to a single, broken tile, and would not permit a reasonable jury to find in his favor under the direct method of proof.

- 16 -

## 2. Indirect Method of Proof

Chism's attempt to rely on the indirect method of proof fares no better. To establish an age discrimination claim using the indirect method of proof, Chism must follow the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff using the burden-shifting approach has the initial burden of proving a prima facie case of age discrimination by showing that (1) he is a member of the protected class of workers over forty years of age; (2) he performed reasonably well on the job in accordance with his employer's legitimate expectations; (3) despite his reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the employer. *Roszkowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 614 (7th Cir. 2005). Once a plaintiff successfully makes a prima facie case of age discrimination, the burden shifts to the employer to articulate a non-discriminatory reason for its actions. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). If the employer is able to meet its burden of production by articulating a legitimate reason for the employment action, the burden shifts back to the plaintiff to show that the employer's stated reason is pretextual. *Id.* A pretext is a "deliberate falsehood," *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006), and the focus is on whether "the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). In other words, even an erroneous belief is not a pretext if it is sincere.

Chism has established the first and third elements of the prima facie case, as it is undisputed that Chism is over forty years of age and that his employment was terminated.

However, Chism's case falters on elements two (satisfactory performance) and four (similarly situated employees were treated more favorably). First, all of the competent evidence of record indicates that Chism was not performing his job in a reasonably satisfactory manner. On the contrary, the memorandum in which Hawkins detailed his May 11, 2005, meeting with Chism clearly shows that Hawkins was dissatisfied with Chism's work performance. (Def.'s LR 56.1 Stmt., Ex. J.) In the meeting, Hawkins indicated that he was displeased with Chism's "belligerent" and "vengeful" attitude towards members of the management team. (*Id.*) Hawkins was critical of Chism for following his own agenda rather than the agenda established by the company and also noted Chism's poor treatment of his subordinates. (*Id.*) As discussed in Section I above, the record also indicates that Chism's performance had been unsatisfactory for years, a fact that was reflected in the paring away of his job responsibilities. Finally, it is undisputed that Chism was accused of sexual harassment by several employees and that, by hiring a private investigator and talking about the accusations in the office, Chism failed comply with Hawkins's request to keep the harassment claims confidential. (Hawkins Aff., ¶¶ 8, 15, 24.)

Chism counters this evidence with his own assertions that he was performing adequately and that he "was conscientious and passionate about accomplishing Kenall corporate objectives [sic]." (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 32.) To the extent that Chism attempts to create an issue of material fact based on his personal perception of his job performance, this information is irrelevant: it is the perception of the decision-maker, not the employee, that is significant. *See Adreani*, 154 F.3d at 398; *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999) ("An employee's self-serving statements about his ability . . . are insufficient to contradict an

employer's negative assessment of that ability.") (internal quotes and citation omitted). Like his perception that Kenall was biased against him, Chism's perception of his performance is inconsequential when not supported by any objective facts. The facts that Chism does muster do not create a genuine issue of fact regarding his performance. He points to his compensation in past years as evidence that his performance was satisfactory. Assuming for the sake of argument that compensation necessarily correlates with performance, the fact that Chism may have performed well in the past does not mean that he was doing so when he was terminated. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991) (previous years' performance reviews did not prove later satisfactory performance). It is also odd that Chism would rely on compensation as a proxy for performance, since the last compensation decision affecting Chism was the decision to deny his yearly raise.

Finally, Chism relies on two notes from Hawkins that congratulate him on completing another year of work at Kenall and praise his contribution to the company in general terms, as well as Hawkins's memorandum announcing Chism's termination, in which he expresses regret at Chism's departure. (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 40.) Chism's argument appears to be that Hawkins would not have thanked him for his "loyalty, commitment, and contribution" to Kenall or told his remaining employees "with regret" that Chism was leaving unless Chism was performing his job in a satisfactory manner. The Court finds this inference unreasonable. To assign any probative value to these innocuous, pro-forma statements would be to abandon all sense of context and convert meaningless pleasantries into damning admissions of fact. *See C&F Packing Co., Inc. v. Doskocil Companies, Inc.*, 126 F.R.D. 662, 687-88 (N.D. Ill. 1989) (emphasizing that pleasantries between judge and attorneys, such as saying "good luck" to

counsel, must be interpreted in light of context and common sense). In the workplace, as in other areas of life, people often say things out of a sense of politeness or a desire to avoid uncomfortable situations that do not express their true feelings. A short note to an employee on the anniversary of his employment thanking him for his hard work is customary in many workplaces; it does not prove that the employer is satisfied with the employee any more than a polite "thank you" card to a gift-giver proves that the recipient is delighted with her gift. *See also Blood v. MTP, Inc.*, No. 02 C 50029, 2002 WL 31949885, \*1 (N.D. Ill. January 14, 2002) (declining to give legal effect to "boilerplate and prefatory pleasantries" in an employee handbook). Similarly, Hawkins's "regret to inform you" statement announcing Chism's departure was clearly a figure of speech rather than an expression of true regret: if he so regretted Chism's departure, Hawkins could have avoided it by not firing him. The court will not belabor this fairly obvious point: even if the statements at issue have some minor probative value, they ultimately do not help Chism, because only evidence that would allow a reasonable jury to find for Chism can create a genuine issue of material fact. In light of the overwhelming evidence that Kenall was dissatisfied with Chism's performance, no reasonable jury could find in his favor based on a few superficial remarks.

Even assuming that he could show satisfactory job performance, Chism would also have to prove that he was treated differently than a similarly situated employee outside of the protected class in order to prevail using the indirect method of proof. This he cannot do. As discussed above, five of the seven employees that Chism identifies as having taken on his job duties after his dismissal are over the age of forty and therefore are within the ADEA's protected class. Furthermore, employees are not similarly situated unless they are directly comparable in all

material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Employees are not similarly situated merely because they perform the same task; rather, the

burden is on the plaintiff to show that there are no differentiating circumstances that could cause

an employer to treat them differently for legitimate reasons. *Ineichen v. Ameritech*, 410 F.3d

956, 960-61 (7th Cir. 2005). Chism seems to assert that a younger co-worker, Michals, was

treated more favorably because he was retained by Kenall and given some of Chism's

responsibilities. (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 31.) However, Chism has not shown that

Michals or any other employee of Kenall was "similarly situated," i.e., that there were no

significant differentiating circumstances surrounding their employment. In Chism's case, the

circumstances that could legitimately affect his employment relationship with Kenall included a

history of declining performance, admonishments for surly behavior toward subordinates and for

disregarding company protocol, accusations of sexual harassment, and the retention of a private

investigator to contact employees regarding alleged incidents of sexual harassment. Chism has

not identified any employee who had all of these attributes, was under the age of forty, and was

treated more favorably. Because he cannot show that his job performance was satisfactory or that

a similarly situated employee was treated more favorably than he was, Chism cannot establish a

prima facie case of age discrimination using the indirect burden-shifting approach.

Finally, even assuming that Chism could establish a prima facie case of age

discrimination, Kenall would still be entitled to judgment as a matter of law because it has

proffered a non-discriminatory explanation for Chism's termination and Chism has produced no

evidence to indicate that this explanation is a pretext for unlawful discrimination. In the context

of the indirect burden-shifting method of proving age discrimination, a "pretext" is a "lie,

specifically a phony reason for some action." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006). An employer's mistaken belief that a plaintiff's conduct merited termination does not render the employer's explanation pretextual so long as the belief was honestly held. *Ptasznik*, 464 F.3d at 696; *see also Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) (plaintiff's pretext argument failed where the employer mistakenly, but honestly, believed that the plaintiff had been late for work). As discussed above, Kenall's stated reasons for discharging Chism include diminished responsibility, performance deficiencies, behavioral issues, allegations of harassment, and retaliation against other employees. There is no evidence in the record, other than Chism's naked allegations, to suggest that Kenall's motives were not genuine. The Court has no doubt that Chism disagrees with Kenall's assessment of him as an employee. However, this Court is not a "super personnel department" that rules on the wisdom of an employer's employment decisions. *Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). The relevant inquiry is whether Kenall's non-discriminatory explanation for its treatment of Chism is genuine. As far as this Court is concerned, it must be so, because Chism has no competent evidence to the contrary.

Although it is unclear exactly where this argument fits in, Chism appears to argue in his brief that a jury could infer pretext in this case because Kenall relied on a violation of an ill-defined policy in terminating him. (Pl.'s Br. at 8-9.) The case Chism relies on, *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2001), is easily distinguished. In *Gordon*, the plaintiff, a probationary flight attendant, was terminated for making an "unauthorized deviation" from his flight schedule. *Id.* at 881-82. United's definition of an unauthorized deviation was unclear and was explained inconsistently throughout the litigation by various United employees. *Id.* at

889-90. Therefore, a jury could have found that the policy was not the true reason for the plaintiff's termination, particularly because the rule's enforcement was "almost unprecedented." *Id.* at 890. In the instant case, by contrast, Kenall did not discharge Chism for violating some esoteric, ill-defined rule; the stated reasons for his termination were his declining performance, attitude problems, failure to adhere to protocol, and disregard for Hawkins's request to keep the sexual harassment allegations confidential. Chism cannot seriously argue that he was unaware that Kenall required employees to perform well, treat other employees respectfully, follow company rules and procedures, and obey requests from supervisors. Even if he had been unaware of these fairly obvious requirements, which are common to almost all employment relationships, he was put on notice in February and May 2005, months before his termination, when Hawkins met with him and articulated his concerns about Chism's work and behavior. Therefore, in contrast to *Gordon*, there is no basis in this case for a jury to conclude that Kenall's reasons for terminating Chism were an ex-post fabrication designed to mask a discriminatory motive. Because there is no genuine issue of material fact that would allow a jury to find that Kenall's non-discriminatory justification for Chism's firing was a pretext, Kenall is entitled to summary judgment on Chism's claim of age discrimination using the indirect method of proof.

## C. Retaliation

Count III of Chism's complaint alleges that Kenall violated the ADEA by firing him in retaliation for his opposition to Kenall's allegedly discriminatory practices.[1] In order to establish

---

[1] Chism's brief in opposition to the motion for summary judgment actually argues that Kenall violated Chism's rights under Title VII. (Pl.'s Br. at 11.) Title VII has no application in
(continued...)

a prima facie case of retaliation, Chism must show that he "engaged in a protected activity, that [he] suffered an adverse employment reaction, and that there is a causal relationship between the two." *Ajayi*, 336 F.3d at 533. While both the direct and indirect methods of proof discussed in the previous section are applicable to retaliation claims, *Sublett*, 463 F.3d at 740, the indirect method can be rejected out of hand because the Court has already concluded that Chism cannot identify a "similarly situated" employee that was treated more favorably than he was. Therefore, he must proceed under the direct method of proof by producing direct or circumstantial evidence to show that he engaged in a protected activity and suffered an adverse employment action as a result. *Id.*

It is undisputed that Chism's employment was terminated, satisfying the requirement of an "adverse employment action." *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (adverse employment actions include termination of employment, demotion, decrease in salary, and loss of benefits). However, there is no evidence from which a jury could conclude that Chism engaged in a "protected activity" that resulted in his termination. While it is difficult to discern from his brief, Chism identifies the factual basis for his retaliation claim in his complaint, alleging that "KENALL has intentionally retaliated against CHISM based upon his statement to KENALL of his filing complaints with the EEOC or Illinois Department of Human Rights." (Compl., ¶ 16.) (caps in original). It is undisputed that Chism threatened, at least implicitly, to file a complaint with the EEOC in the same letter that revoked his acceptance of Kenall's proposed separation agreement. In that letter, dated August 26, 2005, Chism wrote that

---

[1](...continued)
this case because Chism alleges only age discrimination. Retaliation is unlawful under both the ADEA and Title VII. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).

being a "goodwill ambassador" for Kenall "would not allow me . . . EEOC investigation of age discrimination." (Def.'s LR 56.1 Stmt., Ex. C.)

Reporting discrimination to the EEOC would certainly be a protected activity under § 623(d) of the ADEA. *See* 29 U.S.C. § 623(d). However, Chism cannot establish the requisite causal connection between the protected activity and his termination. Kenall informed him that his position was being eliminated on August 16, 2005. On August 23, 2005, Kenall made him a written offer to continue his employment for a definite period of time under a separation or early retirement agreement.[2] After that date, the proverbial ball was in Chism's court. His threat to take his grievances to the EEOC took place after Kenall decided to eliminate his job and after Kenall's early retirement offer. Chism's threat was conveyed at the same time that he rejected Kenall's offer and made a counteroffer requesting an additional 250,000 dollars. From this chronology, it is clear that Kenall's decision to eliminate Chism's position could not have been a response to his threatened EEOC complaint. Nor did Kenall withdraw its offer as a result of the threatened complaint, since Chism had already rejected the separation agreement and made a

---

[2] Although Chism would have continued working at Kenall until he turned sixty-five had he accepted the separation agreement, precedent suggests that the adverse action in this case occurred when Kenall decided to eliminate his position. For example, the Seventh Circuit has noted that courts dealing with academic tenure situations have held that the relevant date of termination is the date of the decision not to grant tenure to the employee, since "termination of employment . . . is a delayed, but inevitable, consequence of the denial of tenure." *Benders v. Bellows and Bellows*, Nos. 06-1487 & 06-2716, slip op. at 8 (7th. Cir. February 12, 2008) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257-58 (1980)). The instant case is analogous because the end of Chism's employment was inevitable once the decision was made to eliminate his position—accepting the separation agreement would merely have postponed this result. Thus the separation agreement is like the "terminal" contracts offered to the employees in the tenure cases "with explicit notice that employment would end upon its expiration." *Benders*, slip op. at 9. Ultimately, the distinction between the elimination of Chism's position and the termination of his employment is immaterial, since Kenall did not withdraw its offer as a result of Chism's threat to go to the EEOC.

counteroffer. In fact, Kenall reiterated its willingness to reach an agreement with Chism even as it notified him of his termination on August 31, 2005. Therefore, Chism was in no worse position after his threat to go to the EEOC than he was before it: the elimination of his position had already been decided, and his failure to come to an agreement with Kenall is attributable only to his own conduct. Kenall cannot be deemed to have "retaliated" merely because it failed to accede to Chism's demand for an extra 250,000 dollars.

Finally, even assuming that Chism had some evidence to establish a prima facie case of retaliation, this would merely shift the burden of production to Kenall, forcing Kenall to articulate a non-discriminatory justification for Chism's termination. As discussed in the previous section, Kenall has provided a legitimate, non-discriminatory basis for its decision: Chism's declining performance, behavior towards peers, failure to follow company policies, and behavior in connection with the allegations of sexual harassment against him. The Seventh Circuit has "consistently held that an employee's insubordination toward supervisors and co-workers, even when engaged in a protected activity, is justification for termination." *Kahn v. U.S. Sec'y of Labor*, 64 F.3d 271, 279 (7th Cir. 1995). Chism has no evidence to suggest that Kenall's explanation is pretextual. Because Chism cannot establish a prima facie case of retaliation or meet his burden of showing that Kenall's explanation for his discharge is a pretext for unlawful discrimination, Kenall is entitled to summary judgment on Chism's retaliation claim.

### D.    Hostile Work Environment

Count II of Chism's complaint alleges that Kenall discriminated against Chism by creating a hostile work environment based on his age. As a threshold matter, it is not clear that "hostile work environment" claims, which originated in the context of Title VII, are available to plaintiffs like Chism who allege only age discrimination under the ADEA. The Seventh Circuit has assumed, but never decided, that hostile environment claims are cognizable under the ADEA. *See, e.g., Racicot*, 414 F.3d at 678; *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). The Supreme Court has noted that the ADEA and Title VII, while addressing different types of employment discrimination, contain nearly identical language, and that they have often been interpreted consistently. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233-34 (2005). However, the Supreme Court has acknowledged that the age discrimination addressed by the ADEA has historically been different in intensity and scope from the types of discrimination addressed under Title VII. *Id.* at 240-41. The Court has also observed that Congress did not prohibit disparate treatment as completely under the ADEA as it did under Title VII. *Id.* at 240. This is relevant because the Supreme Court's recognition of "hostile work environment" claims under Title VII was based on Congress's intent "to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal quotes omitted). In light of the Supreme Court's recognition that there are differences in the historical and social contexts of the ADEA and Title VII, as well as possible differences in their intended scope, it may be a mistake to assume uncritically that every cause of action recognized under Title VII is necessarily available under the ADEA.

Assuming that Title VII-style hostile work environment claims are cognizable under the ADEA, Chism's claim is doomed because he has no evidence to support a prima facie case. The Seventh Circuit has held that "[i]n order to succeed on a hostile work environment claim, 'the environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so.'" *Bennington*, 275 F.3d at 660 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). In determining whether conduct is so offensive as to create a hostile environment, courts must consider the frequency and duration of the conduct, its severity, and whether it is physically threatening or humiliating. *Id.* Furthermore, it is not enough that the conduct is offensive; the plaintiff must be "subjected to unwelcome harassment *on the basis of*" a protected characteristic—in this case, age. *Kriescher v. Fox Hills Golf Resort and Conference Ctr.*, 384 F.3d 912, 915 (7th Cir. 2004) (emphasis added). Finally, even if the environment is hostile, an employer will be liable only if the harasser is a supervisor, *Huff v. Sheahan*, 493 F.3d 893, 900 (7th Cir. 2007), or if the harasser is a co-worker and the employer has notice of the harassment but fails to act reasonably to stop it. *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 373 (7th Cir. 2007).

Chism's complaint alleges that Kenall "intentionally created a hostile environment . . . based upon filing complaints by Chism for discrimination for failure to investigate charges of discrimination against him, for allowing an environment riddled with slander and suspicion of Chism personally [sic]." Parsing this language, it is not clear whether Chism is alleging that Kenall's top management was harassing him or that Kenall failed to prevent harassment by his co-workers, who were creating an environment of "slander and suspicion." In either case,

Chism's claim would fail. There is no evidence of harassment by Hawkins, who, as President, was Chism's supervisor. It is clear that Chism was subjectively offended when Hawkins asked him about the allegations of sexual harassment, ordered him to take a sexual harassment training course, and criticized some aspects of his performance. However, these actions were not objectively unreasonable or offensive. A reasonable person under the circumstances would understand that a supervisor, faced with poor performance and accusations of sexual harassment, would need to address those issues with the employee. Indeed, as discussed above, an employer that failed to take steps to address allegations of co-worker harassment might expose itself to a hostile environment claim by the accusing employee. *See Bernier*, 495 F.3d at 373 (an employer's legal duty in co-employee harassment cases is discharged if it takes reasonable steps to discover and rectify sexual harassment by its employees). In light of the undisputed fact that Hawkins was aware of several allegations against Chism, it was eminently reasonable for him to address the issue with Chism. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995) (finding that an employer responded appropriately to a charge of harassment by confronting the accused, warning him, and suspending his pay raise and bonus).

To the extent that Chism may be alleging that his co-workers created a hostile environment by slandering him with their sexual harassment allegations, he cannot show a basis for Kenall's liability. First, assuming that the accusations were false, all of the evidence indicates that it was Chism rather than Kenall or his accusers that publicized them in the workplace. Second, there is no indication that Kenall knew or had reason to believe that the reports were false. Third, an employer is liable for coworker harassment only if it fails to take "reasonable steps" to address the situation. Kenall did take reasonable steps by investigating the other

workers' claims about Chism. Had Kenall failed to investigate, it could have been liable to the complaining co-workers for allowing a hostile work environment of sexual harassment. Had Kenall somehow punished the co-workers for accusing Chism of harassment, Kenall's actions might have been viewed as retaliation against employees who were opposing an unlawful activity. Under the circumstances, it is obvious that Kenall responded appropriately.

Finally, even if Kenall and/or Chism's co-workers were engaging in objectively offensive conduct, Chism has no evidence at all that these actions occurred "because of" his age. As the Seventh Circuit has observed, employment laws like Title VII and the ADEA are not a "code of general civility" for the American workplace: they do not prohibit all rudeness, only objectively offensive harassment that occurs because of prohibited animus. *See Moser v. Indiana Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) (collecting cases). In this case, Chism has no evidence to show a causal connection between his age and the alleged harassment. Because Chism has no evidence that his supervisor engaged in objectively offensive conduct, or that Kenall was aware of and failed to address co-worker harassment, or that any harassment was related to his age, Kenall is entitled to summary judgment on his hostile work environment claim.

## E.    Breach of Contract

The fourth and final count of Chism's complaint alleges a breach of contract by Kenall. The complaint literally states that Chism is suing for "Failure to Abide by Severance Agreement," but this cannot be the case, as Chism does not dispute that he accepted the severance agreement on August 23, 2005, and then revoked his acceptance on August 26, 2005. Kenall's only action in connection with the severance agreement was to make the offer; the

contract could not have been breached, as it was never formed. As the litigation has progressed, however, Chism has indicated that he believes Kenall is liable for breaching an employment contract with him. It is undisputed that Kenall originally hired Chism in 1978 under a written employment contract, which specified that it was valid for one year. Chism argues that after this contract expired, it was "replaced by a 1979 implied verbal integrity career employment contract." (Pl.'s LR 56.1 Stmt. of Add'l Facts, ¶ 1.) The Court has gleaned from Chism's written submissions and statements of counsel at oral argument that Chism believes Kenall became obligated at some point to employ him for the duration of his career, even though there was no written agreement between the parties after 1978.

Under Illinois law, an employment relationship without a fixed duration is presumed to be at will, and is terminable by either party with or without cause. *Robinson v. Ada S. McKinley Cmty. Serv.*, 19 F.3d 359, 360 (7th Cir. 1994) (citing *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 489 (1987)). This presumptive rule of at-will employment may, of course, be overcome by evidence that the parties agreed otherwise. *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 485, 680 N.E.2d 1347, 1349 (1997). In Illinois, oral contracts for employment are viewed more skeptically than written contracts, *Smith v. Bd of Educ. of Urbana Sch. Dist. No. 116 of Champaign Cty.*, 708 F.2d 258, 263 (7th Cir. 1983), and the analysis of such contracts is "more scrutinizing." *Maher v. Con-Way Intermodal, Inc.*, No. 92 C 2863, 1993 WL 243319, at *6 (N.D. Ill. June 30, 1993).

In order for an employee to prove the existence of a binding oral contract for permanent employment, the employee must prove that the employer made clear and definite oral promises as to the terms of employment, and that there was sufficient consideration for the promise. *See*

*McInerney*, 176 Ill. 2d at 485, 680 N.E.2d at 1349; *see also Eastman v. Chicago, Cent. & Pac. R.R. Co.*, 930 F.2d 1173, 1177 (7th Cir. 1991). In this context, the term "permanent employment" is not limited to offers for lifetime employment; it also includes employment agreements that provide that the employee may work as long as she wishes or as long as she performs the job adequately. *See, e.g., Martin v. Fed. Life Ins. Co. (Mut.)*, 268 Ill. App. 3d 698, 699, 701-02, 644 N.E.2d 42, 44-45 (1994) (using the term "permanent employment" to describe an offer that employee "could have a job as long as he wanted"); *Wilder v. Butler Mfg. Co.*, 178 Ill. App. 3d 819, 821-22, 533 N.E.2d 1129, 1131 (1989) (treating promise that an employee would have a job "as long as [she] produced" as a promise of permanent employment).

In light of this legal framework, it is clear that Chism's contract claim must fail. The record discloses no evidence of a "clear and definite" oral promise; the evidence that comes closest to a promise of employment is Chism's testimony that Kenneth Hawkins told him "if I can trust you, you can trust me and we can trust each other. So, we're not going to have an Employment Agreement. We're just going to go forward from here without it. But what we've talked about here is in place." (Chism Dep. at 27-28.) The conversation that Chism recalls is too vague to be the basis for an employment contract, and is better classified as an "informal expression[] of good will and hope," which is not sufficiently clear and definite under Illinois law to overcome the presumption of at-will employment. *See Wilder*, 178 Ill. App. 3d at 822, 533 N.E.2d at 1130-31 (statements by the employer that the employee would be employed permanently and that she would never be laid off if she continued to do her job were not sufficiently clear and definite).

Beyond the fatally indefinite terms of Chism's alleged oral contract for lifetime employment, the agreement lacks adequate consideration. The Seventh Circuit has noted that Illinois courts will enforce an oral promise to employ a person for life or some other equally indefinite length of time only where the employee makes some sacrifice that he probably would not have made without a guarantee of continued permanent employment. *See Smith*, 708 F.2d at 263. Generally, the mere agreement to continue working in the present job at the present level of effort is insufficient consideration for such a promise. Compare *Smith*, 708 F.2d at 263, and *Lamaster v. Chicago & N.E. Illinois Dist. Council of Carpenters Apprentice and Trainee Program*, 766 F.Supp. 1497, 1501 (N.D. Ill. 1991) ("a mere promise to perform the services of employment alone cannot support a contract for permanent employment"), with *McInerney*, 176 Ill.2d at 488, 680 N.E.2d at 1350-51 (finding sufficient consideration where employee gave up a lucrative job offer in exchange for lifetime employment). At best, Chism has provided evidence that would allow a jury to conclude that Kenneth Hawkins, acting as Kenall's president, offered him lifetime employment under the same conditions provided in the written agreement. Chism does not claim to have given up any concrete offers of employment elsewhere or allege any other type of additional consideration. Therefore, Chism has no evidence of a sufficiently specific exchange of promises and no evidence of consideration to support his claim that he had a lifetime employment contract with Kenall. Because there is no evidence upon which a reasonable jury could find in Chism's favor, Kenall is entitled to summary judgment on Chism's claim for breach contract.

Parts of Chism's written submissions suggest that Kenall's sexual harassment policy created a duty on Kenall's part to investigate the claims of sexual harassment against Chism

- 33 -

more thoroughly. Under Illinois law, it is possible for a written employee handbook to create enforceable contractual rights between an employer and employee. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 364 (7th Cir. 2005). However, in order for a "handbook or other policy statement" to create enforceable rights, it must "contain a promise clear enough that an employee would reasonably believe that an offer has been made." *Id.* (citing *Duldulao*, 115 Ill. 2d at 490-92, 505 N.E.2d 318-19). Here, Chism seems to claim the right to have harassment claims against him investigated thoroughly, i.e., beyond interviewing the accuser and accused, which was the extent of Kenall's probe. However, Kenall's policy states with respect to claims of harassment:

> Any reported allegations . . . will be investigated promptly. The investigation *may* include individual interviews with the parties involved and, when necessary, with individuals who may have observed the alleged conduct or may have other relevant knowledge.

(Pl.'s LR 56.1 Stmt. of Add'l Facts, Ex. R.) (emphasis added). This written policy, particularly in light of the permissive "may," cannot reasonably be interpreted to promise any specific procedural or investigative measures. Furthermore, Chism has no evidence that the procedures provided for were not followed: it is undisputed that after he was accused, Hawkins spoke to him and his accusers. There is no evidence to suggest that any third parties had relevant information. Therefore, any contractual entitlement to an investigation Chism may have had was honored. Chism may feel that he was entitled to additional process in order to clear his name, but his position has no legal basis, and Kenall is entitled to summary judgment.

### III. **Conclusion**

For the reasons discussed above, there is no genuine dispute of material fact in this case

and Kenall is entitled to summary judgment on all counts. Therefore, Kenall's motion for

summary judgment is granted.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: February 15, 2008.